IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID MATSUURA, ET AL., | ) | CIVIL NO. 96-01180 SOM-LEK |
| | ) | CIVIL NO. 97-00716 SOM-LEK |
| Plaintiffs, | ) | CIVIL NO. 99-00660 SOM-LEK |
| | ) | CIVIL NO. 00-00328 SOM-LEK |
| vs. | ) | CIVIL NO. 00-00615 SOM-LEK |
| | ) | **(FOR FILING IN ALL CASES)** |
| E.I. du PONT DE NEMOURS AND | ) | |
| COMPANY, | ) | ORDER AFFIRMING IN PART AND |
| | ) | REVERSING IN PART MAGISTRATE |
| Defendants. | ) | JUDGE ORDERS DATED JULY 11, |
| _____ | ) | 2006, AND AUGUST 2, 2006: |
| FUKU-BONSAI, INC., ET AL., | ) | |
| | ) | ORDER REVERSING MAGISTRATE |
| Plaintiffs, | ) | JUDGE ORDER THAT GRANTED |
| | ) | DUPONT'S MOTION IN LIMINE NO. |
| vs. | ) | 4 AND PRECLUDED EVIDENCE OF |
| | ) | POST-1994 SETTLEMENTS AND |
| E.I. du PONT DE NEMOURS AND | ) | VERDICTS; |
| COMPANY, ET AL., | ) | |
| | ) | ORDER AFFIRMING IN PART AND |
| Defendants. | ) | REVERSING IN PART MAGISTRATE |
| _____ | ) | JUDGE ORDER THAT GRANTED IN |
| LIVING DESIGNS, INC., ET AL., | ) | PART AND DENIED IN PART |
| | ) | DUPONT'S MOTION IN LIMINE NO. |
| Plaintiffs, | ) | 1 TO EXCLUDE THE TESTIMONY OF |
| | ) | J. ANDERSON BERLY; |
| vs. | ) | |
| | ) | ORDER AFFIRMING IN PART AND |
| E.I. du PONT DE NEMOURS AND | ) | REVERSING IN PART MAGISTRATE |
| COMPANY, ET AL., | ) | JUDGE ORDER THAT GRANTED IN |
| | ) | PART AND DENIED IN PART |
| Defendants. | ) | DUPONT'S MOTION IN LIMINE NO. |
| _____ | ) | 2 TO EXCLUDE THE TESTIMONY OF |
| MCCONNEL, INC., a CALIFORNIA | ) | JAMES VENTURA; |
| CORPORATION, | ) | |
| | ) | AND |
| Plaintiff, | ) | |
| | ) | ORDER AFFIRMING IN PART AND |
| vs. | ) | REVERSING IN PART MAGISTRATE |
| | ) | JUDGE ORDER ISSUED ON AUGUST |
| E.I. du PONT DE NEMOURS AND | ) | 2, 2006 (PERTAINING TO |
| COMPANY, | ) | DUPONT'S MOTIONS IN LIMINE |
| | ) | NOS. 6, 7, 8, 9, 10, 11, 12, |
| Defendant. | ) | 13, AND 14) |
| | ) | |
| _____ | ) | |

```
ANTHURIUM ACRES, ET AL.,        )
                                )
          Plaintiffs,           )
                                )
     vs.                        )
                                )
E.I. du PONT DE NEMOURS AND     )
COMPANY,                        )
                                )
          Defendant.            )
_____ )
```

ORDER AFFIRMING IN PART AND REVERSING IN PART
MAGISTRATE JUDGE ORDERS DATED JULY 11, 2006, AND AUGUST 2, 2006

I.      INTRODUCTION.

The factual background for these cases was set forth by the Ninth Circuit in Living Designs, Inc. v. E.I. DuPont De Nemours & Co., 431 F.3d 353 (9th Cir. 2005), cert. denied, 126 S. Ct. 2861 (2006). Except as relevant, that background is not repeated here.

Plaintiffs are commercial nurseries in Hawaii that sued E.I. DuPont De Nemours and Company in 1992 and 1993, alleging that contaminated Benlate, a DuPont fungicide, had killed or damaged their plants. Id. at 356. In similar product liability suits filed against DuPont around the country, DuPont had allegedly falsely represented that soil tests had produced no evidence that Benlate was contaminated. During discovery in Plaintiffs' product liability cases, DuPont allegedly withheld evidence of Benlate contamination that should have been disclosed to Plaintiffs. Id. (quoting Matsuura v. Alston & Byrd, 166 F.3d 1006, 1007, amended by 179 F.3d 1131 (9th Cir. 1999)).

2

        In April 1994, Plaintiffs settled their product liability cases against DuPont.  Plaintiffs say that only after settling their claims did they discover that DuPont had improperly failed to reveal three different categories of tests indicating that Benlate was contaminated: 1) Alta Analytical Laboratories tests; 2) Costa Rica field tests; and 3) "BAM" tests conducted by A & L Midwest Laboratories and DuPont's in-house testing facilities.[1] Living Designs, 431 F.3d at 357.  The present cases followed, with Plaintiffs alleging that DuPont had fraudulently withheld the evidence of Benlate contamination to induce them to settle their claims against DuPont for less than Plaintiffs would have settled the cases for had they known about the Benlate contamination.

        The present cases have a long history.  On December 5, 2005, the Ninth Circuit reversed a judgment entered in favor of DuPont by the Honorable Manuel L. Real, sitting as a visiting judge in the District of Hawaii.  The Ninth Circuit remanded the matter to this court with the direction that it be assigned to a new district court judge.  These cases were then assigned to the present judge for trial.  In pretrial discussions, the parties agreed that Magistrate Judge Leslie E. Kobayashi could hear a number of motions in limine well before the trial date.  Those

_____

    [1]The BAM tests are not at issue on the present appeals.

involved in the case hoped that early evidentiary rulings might facilitate settlement.

Magistrate Judge Kobayashi did a commendable job of sorting through the numerous motions and voluminous papers and exhibits.  That did not stop the parties from appealing the orders dated July 11 and August 2, 2006.[2]  This court now affirms those orders in part and reverses in part.

II.      STANDARD OF REVIEW.

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72(a) of the Federal Rules of Civil Procedure, and Local Rule 74.1, any party may appeal to the district court any pretrial nondispositive matter determined by a Magistrate Judge.  Such an order may be reversed by the district court judge only when it is "clearly erroneous or contrary to law."  The threshold of the "clearly erroneous" test is high.  See Boskoff v. Yano, 217 F. Supp. 2d 1077, 1083 (D. Haw. 2001) ("Under the 'clearly erroneous' standard, the lower court's ruling must be accepted unless, after reviewing the entire record, this Court is left with the definite and firm conviction that a mistake has been committed."

---

[2]Because the files in these cases are so voluminous and because references to other documents and exhibits are difficult to locate in the electronic case files, the parties shall not, in future filings in these cases, incorporate by reference arguments that they have made in other filings.  The parties shall also refrain from referring the court to exhibits in those other filings unless two courtesy copies of the exhibits are delivered to chambers along with any pleading or filing making such a reference.  Moreover, all documents filed with this court must comply with applicable page and/or word limitations.

4

(quotations and citations omitted)); Thorp v. Kepoo, 100 F. Supp. 2d 1258, 1260 (D. Haw. 2000) (the clearly erroneous standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed"); accord United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."); Burdick v. Comm'r Internal Revenue Serv., 979 F.2d 1369, 1370 (9th Cir. 1992) ("A finding of fact is clearly erroneous if we have a definite and firm conviction that a mistake has been committed.").

III.     ANALYSIS

         A.    This Court Reverses the Magistrate Judge's Order Granting DuPont's Motion in Limine No. 4 and Precluding Evidence of Post-1994 Settlements and Verdicts.

         In Motion in Limine No. 4, DuPont sought to preclude evidence of post-1994 settlements and verdicts, arguing that the evidence is irrelevant and barred by Rules 408 and 403 of the Federal Rules of Civil Procedure.  On July 11, 2006, the Magistrate Judge ruled that evidence of post-1994 settlements (but not verdicts) was barred by Rule 408, and that evidence of post-1994 settlements and verdicts was barred by Rule 403.  See July 11, 2006, Order at 16-17, 30.  Plaintiffs have appealed this decision.  Given its definite and firm conviction that a mistake

has been made and that the Magistrate Judge's order granting

Motion in Limine No. 4 is contrary to law, the court reverses

that order.

Rule 408 of the Federal Rules of Evidence states:

Evidence of (1) furnishing or offering or
promising to furnish, or (2) accepting or
offering or promising to accept, a valuable
consideration in compromising or attempting
to compromise a claim which was disputed as
to either validity or amount, is not
admissible to prove liability for or
invalidity of the claim or its amount.
Evidence of conduct or statements made in
compromise negotiations is likewise not
admissible.  This rule does not require the
exclusion of any evidence otherwise
discoverable merely because it is presented
in the course of compromise negotiations.
This rule also does not require exclusion
when the evidence is offered for another
purpose, such as proving bias or prejudice of
a witness, negativing a contention of undue
delay, or proving an effort to obstruct a
criminal investigation or prosecution.

By its terms, Rule 408 is limited to settlement

evidence going to "liability for or invalidity of the claim or

its amount."  Rule 408 is inapplicable to evidence of post-1994

settlements.  First, Plaintiffs do not intend to use evidence of

any settlement of a claim to prove liability for or invalidity of

the claim that was settled or the appropriateness of the

settlement amount.  Instead, that evidence will be used to

demonstrate the probable settlement value of Plaintiffs' cases

here in the absence of DuPont's alleged fraud.  Rule 408

specifically allows that use of the settlement evidence, as it is

6

being "offered for another purpose." See United States v. Pend Oreille Pub. Util. Dist. No. 1, 926 F.2d 1502, 1507 n.4 (9th Cir. 1991) (Rule 408 inapplicable when the settlement evidence was "to prove that the disputed lands were suitable for agricultural use prior to construction of the dam," rather than liability for or invalidity of a claim or its amount).

In Living Designs, the Ninth Circuit cited DiSabatino v. United States Fidelity & Guranty Co., 635 F. Supp. 350 (D. Del. 1986), with approval. DiSabatino discussed the options a plaintiff has upon learning that he or she was fraudulently induced to settle. The plaintiff may elect to rescind the settlement and proceed to trial or to keep the settlement and sue to recover damages for the fraud. DiSabatino, 635 F. Supp. at 352. A plaintiff who chooses the latter may "file suit against the ones committing the alleged fraud and recover such an amount as will make the settlement an honest one." Id. at 355. The evidence of post-1994 settlements is offered to show what Plaintiffs' honest settlement would have been, as the post-1994 settlements were reached after the contamination test results became known to the claimants in those cases.

In Pend Oreille, the Ninth Circuit agreed with the Fifth Circuit that Rule 408 "'permits settlement evidence for any purpose except to prove or disprove liability or the amount of the claim.'" 926 F.2d at 1507 n.4 (quoting United States Aviation Underwriters, Inc. v. Olympia Wings, Inc., 896 F.2d 949,

7

956 (5th Cir. 1990)).  The post-1994 settlements will not be
offered to prove or disprove liability for the claims resolved by
those settlements, or the value of those claims.  Nor will the
settlements be offered to show what Plaintiffs in the present
cases could have obtained in liability or damage judgments had
they tried the claims they settled.  Rule 408's prohibition on
settlement evidence is therefore inapplicable.  See Cresswell v.
Sullivan & Cromwell, 704 F. Supp. 392, 409 (S.D.N.Y. 1989)
("While the settlements in Merana and Reitz are not admissible to
prove Bache's liability pursuant to Rule 408 of the Federal Rules
of Evidence, they have probative value with respect to
materiality, intent and reliance."), vacated on other grounds by
922 F.2d 60 (2d Cir. 1990); Abundis v. United States, 15 Cl. Ct.
619, 621 (1988) ("There is an exception to application of Rule
408, however, when the evidence of settlement is not offered to
prove liability or damages, but for some other purpose, such as
to show a defendant's intent to commit fraud, or to demonstrate a
continuous course of reckless conduct.").

        The Advisory Committee Notes to Rule 408 also support
the conclusion that Rule 408 is inapplicable here.  Absent
contrary congressional action, the 2006 amendments to Rule 408
will amend that rule to prohibit settlement evidence "to prove
liability for, invalidity of, or amount of a claim."  The
Advisory Committee Notes indicate that the intent of this
amendment "is to retain the extensive case law finding Rule 408

8

inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim . . . . So[,] for example, Rule 408 is inapplicable if [evidence is offered] to show that a party made fraudulent statements to settle a litigation." Here, Plaintiffs are claiming that DuPont made fraudulent statements and/or omissions to settle the underlying product liability suits with Plaintiffs for less than would otherwise have been likely.

The Magistrate Judge also clearly erred in ruling that evidence of post-1994 settlements and verdicts is barred by Rule 403 of the Federal Rules of Evidence. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Magistrate Judge ruled that the post-1994 settlements and verdicts "would be unduly inflammatory" and that their probative value is "minimal" because Plaintiffs are not required to prove the merits of the claims they made in the product liability litigation. See July 11, 2006, order at 16-17.

Under Rule 403, "unfair prejudice" means "'an undue tendency to suggest decision on an improper basis.'" United States v. Lyons, 453 F.3d 1222, 1232 (9th Cir. 2006) (quoting Rule 403 Advisory Committee Notes). Plaintiffs must establish

9

the effects, if any, of DuPont's alleged lies during discovery in the product liability lawsuits.  Plaintiffs allege that DuPont fraudulently caused them to settle their cases through deception.  See Living Designs, 431 F.3d at 368 ("We conclude there is a genuine issue of material fact regarding whether Plaintiffs suffered damages as a result of DuPont's fraud.").  Evidence of post-1994 settlements and verdicts is probative of whether DuPont did indeed deliberately mislead Plaintiffs to obtain lower settlements, and of what, if any, damages resulted.  The post-1994 settlements do not suggest decision on an improper basis.  The evidence is directly relevant to the matters in issue.

The Magistrate Judge's reasoning that the settlement evidence has "minimal" value because "Plaintiffs are not required to prove the merits of the underlying litigation" assumes that the settlement evidence is relevant only to the underlying litigation.  This was clear error.  Again, the post-1994 settlements and verdicts may show DuPont's intent or motive in allegedly failing to disclose the test results indicating that Benlate was damaging crops.  The settlements and verdicts also show the effect of the alleged misrepresentations, which Plaintiffs say they relied on.

Much of DuPont's objection to the post-1994 evidence stems from a misreading of the Ninth Circuit's ruling in Living Designs.  The Ninth Circuit stated that Plaintiffs' settlement fraud damages were the probable amount of the various settlements

"in the absence of fraud after considering all known or foreseeable facts and circumstances affecting the value of the claim on the date of settlement."  431 F.3d at 368.  DuPont argues that the Ninth Circuit's reference to "the date of settlement" is a reference to April 1994, when Plaintiffs signed settlement agreements.  The post-1994 settlements and verdicts involve matters occurring after Plaintiffs' settlements and are, DuPont posits, therefore irrelevant to determining the value of any claim in April 1994.  The court is not convinced.

The Ninth Circuit's reference to the probable amount of settlement in the absence of fraud "on the date of settlement" does not require the use of the actual dates of the underlying settlements.  While Living Designs did not define what it meant by "the date of settlement," the Ninth Circuit was clearly attempting to put Plaintiffs in the position they would have been in had they not been allegedly defrauded.  Plaintiffs may want to present evidence indicating that "the date of settlement" would not have been April 1994 had they known about the withheld Benlate tests.  In other words, Plaintiffs may want to introduce the post-1994 settlements and verdicts through Kevin Malone, or some other witness, who may describe a thought process or strategy that would have been affected by knowledge of contamination test results and/or of events that foreseeably followed the revelation of those tests.  Malone or another witness might, for example, testify that, had the test results

11

been known earlier, cases in other jurisdictions would likely have proceeded to settlement or trial before Plaintiffs' cases, so that the dispositions of those other cases, even if after April 1994, would have been known before Plaintiffs settled. Allowing Plaintiffs to introduce evidence of other settlements and verdicts is consistent with putting Plaintiffs in the position they would have been in but for the alleged settlement fraud. See, e.g., DiSabatino, 635 F. Supp. at 355.

Even if Plaintiffs were, as DuPont argues, tied to a settlement date of 1994, they should not be foreclosed from arguing that, had DuPont timely disclosed the 1992 Costa Rica field tests and the 1993 Alta tests in the various cases around the country and in the underlying product liability cases, the bigger post-1994 settlements and verdicts seen after that information was disclosed would have occurred before April 1994.

Finally, even if the other cases would have settled after Plaintiffs' date of settlement, those other settlements remain relevant to the probable amount of Plaintiffs' settlement in the absence of fraud. The evidence of the post-1994 settlements and verdicts will help the trier of fact determine what the settlement amounts would likely have been on the date of Plaintiffs' settlements, whatever that date, but for DuPont's alleged fraudulent inducement to settle Plaintiffs' cases. In Living Designs, the Ninth Circuit specifically stated that the trier of fact must determine the probable amount of settlement

"after considering all known and foreseeable facts and circumstances affecting the value of the claim on the date of settlement." Id. at 368.  Perhaps the clearest sign that DuPont is mistaken in arguing against post-1994 evidence is the Ninth Circuit's statement that "comparable settlements of much larger amounts" create a triable issue of fact. Living Designs, 431 F.3d at 368-69.  Those settlements of larger amounts were reached after Plaintiffs settled their cases, so the Ninth Circuit appears to have thought evidence of post-1994 settlements was relevant to the present dispute.

Nor is the court persuaded by DuPont's argument that allowing the introduction of evidence pertaining to other settlements and verdicts will require mini-trials within this trial.  It may be that introduction of the evidence will lengthen the trial, but DuPont does not even attempt to quantify the delay, much less show that it will render trial unwieldy.

It can hardly be said that the post-1994 settlements and verdicts are any more inflammatory than DuPont's alleged fraudulent conduct.  The prejudicial effect of the settlement evidence therefore does not "substantially outweigh" its probative value, and the evidence is not barred by Rule 403.  The court reverses the Magistrate Judge with respect to Motion in Limine No. 4.

> B. This Court Affirms in Part and Reverses in Part the Magistrate Judge's Order Granting in Part and Denying in Part DuPont's Motion in Limine No. 1 to Exclude the Testimony of J. Anderson Berly.

On March 13, 2006, DuPont filed Motion in Limine No. 1, seeking to preclude the expert testimony of J. Anderson Berly. On July 11, 2006, the Magistrate Judge granted that motion in part and denied it in part. The Magistrate Judge ruled that Berly is qualified to testify as a litigation attorney in products liability litigation and that his experience and training give him specialized knowledge that will assist the trier of fact. July 11, 2006, Order at 9-10.

The Magistrate Judge ruled Berly may opine on the following matters: 1) the Alta tests should have been disclosed; 2) the Costa Rica field tests should have been disclosed; 3) DuPont was obligated to provide discovery; 4) damages may be calculated using the Yardstick method; and 5) the Risk Factor Evaluation method assists in determining whether to settle a case or go to trial.

The Magistrate Judge precluded Berly from testifying: 1) that DuPont had a "scheme" to conceal evidence; 2) that a plaintiff's attorney who had the Alta tests and Costa Rica field tests would have defeated DuPont at trial; 3) that the Alta tests and the Costa Rica field tests were material to settlement value determinations; 4) that any uncertainty as to calculating damages was the result of DuPont's fraud; 5) that the settlement value

14

may be calculated using the "Before and After" method; and 6) that the settlement value of Plaintiffs' cases was 75% of the amounts claimed.  The Magistrate Judge also precluded Berly from testifying as to statements of law and as to opinions not disclosed in his expert report.  Both Plaintiffs and DuPont now appeal from the Magistrate Judge's decision on Motion in Limine No. 1.

> 1. Plaintiffs' Appeal.
>
> > a. Berly May Not Testify That DuPont Had a "Scheme" to Reduce the Settlement Value of Plaintiffs' Cases By Withholding Evidence.

Based on his review of cases tried before Plaintiffs settled their cases, Berly opined that DuPont had engaged in a "scheme" to reduce the settlement value of the various Benlate products liability cases by withholding evidence.  Berly reasoned that, by withholding data indicating that Benlate was contaminated, DuPont was able to raise two strong defenses: 1) that Benlate was not contaminated, and 2) that DuPont's extensive testing proved that Benlate did not harm crops.  The Magistrate Judge precluded this testimony, ruling that specialized knowledge was not necessary to understand the impact of DuPont's withholding of the data and that Berly's opinion as to this "scheme" evidence was barred by Rule 403.  See July 11, 2006, Order at 13-14.  This part of the July 11, 2006, Order is affirmed.

15

Plaintiffs' mere disagreement with the Magistrate Judge's determination that expert testimony is unnecessary for a jury to understand the effect of DuPont's withholding of evidence does not justify reversal of the Magistrate Judge's ruling.  See Stewart v. Women in Community Serv., Inc., 1998 WL 777997 (D. Nev. Oct. 7, 1998) (a party's statement of disagreement with the magistrate judge's order does not show that the order is clearly erroneous or contrary to law); see also Andrews v. Goodyear Tire & Rubber Co., 191 F.R.D. 59, 68 (D.N.J. 2000) ("A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review.").  The use of the word "scheme" is highly prejudicial, and the prejudice substantially outweighs any probative value. See Fed. R. Evid. 403.

> b.   Berly May Not Testify That a Plaintiff's Attorney Who Had the Results of the Alta Tests and the Costa Rica Field Tests Would Have Defeated Dupont at Trial.

The Magistrate Judge precluded Berly from testifying that a plaintiff's attorney who had the results of the Alta tests and the Costa Rica field tests would have defeated DuPont at trial.  The Magistrate Judge reasoned that the evidence was irrelevant because Plaintiffs need not prove the merits of the underlying product liability case.  See July 11, 2006, Order at 14 (citing Living Designs, 431 F.3d at 368).  Plaintiffs fail to show that this ruling was clearly erroneous or contrary to law.

16

In <u>Living Designs</u>, the Ninth Circuit specifically ruled that Plaintiffs do not have to prove that they would have won the underlying products liability action.  Instead, Plaintiffs must establish DuPont's liability for settlement fraud, and then must present evidence of the amount they probably would have settled for.  431 F.3d at 368.  Berly's opinion that a plaintiff's attorney would have defeated DuPont in the underlying products liability lawsuit had the test data been available is irrelevant to the present dispute.  The Magistrate Judge ruled that Berly may testify that the Alta tests and the Costa Rica field tests would have substantially increased the settlement value of Plaintiffs' cases because the information would have significantly undercut DuPont's defenses.   <u>See</u> July 11, 2006, Order at 10-11.  It is this opinion, rather than Berly's speculation about who would have ultimately won the underlying cases, that goes to the issues in the present litigation.

            c.    Berly May Not Testify That the Results of the Alta Tests and the Costa Rica Field Tests Were Material to Determining <u>Settlement Value.</u>

The Magistrate Judge precluded Berly's opinion as to whether results of the Alta tests and the Costa Rica field tests were "material," reasoning that specialized knowledge is not necessary to assist the trier of fact on the issue of materiality and that such evidence is barred under Rule 403.  <u>See</u> July 11,

2006, Order at 15.  This ruling was neither clearly erroneous nor contrary to law.

Berly may testify that the Alta tests and the Costa Rica field tests would have substantially increased the settlement value of the cases because the information would have significantly undercut DuPont's defenses.  <u>See</u> July 11, 2006, Order at 10-11.  The Magistrate Judge only precluded Berly from referring to the tests as "material," something that a lay person can understand without expert testimony.  <u>See</u> Fed. R. Evid. 702.

As Plaintiffs do not meet their burden of showing that this ruling was clearly erroneous or contrary to law, this court need not decide whether the Magistrate Judge applied the wrong legal standard in performing a Rule 403 analysis, or whether she inadvertently failed to state that the probative value of the evidence was <u>substantially</u> outweighed by its prejudicial effect.

> d.   Berly May Testify About the "Before and After" Method of Determining Plaintiffs' Damages.

The Magistrate Judge precluded Berly's opinion about the "Before and After" method of calculating Plaintiffs' damages.  <u>See</u> July 11, 2006, Order at 16-17.  This method compared the settlements reached in Plaintiffs' cases with settlements and verdicts obtained after disclosure of the test data.  The Magistrate Judge said that Berly's opinion based on the "Before and After" method was barred by Rules 408 and 403.  For the

18

reasons stated above with respect to DuPont's Motion in Limine No. 4, this ruling is reversed.

Additionally, Rule 703 of the Federal Rules of Evidence allows Berly to rely on settlements reached in cases after 1994 in opining about what the probable settlement value of Plaintiffs' cases would have been at the time of settlement in the absence of DuPont's alleged fraud. Such reliance would be allowed even if this court had not ruled post-1994 settlement evidence admissible. See Fed. R. Evid. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.").

Even if such evidence were inadmissible, an expert could testify about it if relied upon, provided the court gave a limiting instruction. See United States v. 0.59 Acres of Land, 109 F.3d 1493, 1496 (9th Cir. 1997) ("When inadmissible evidence used by an expert is admitted to illustrate and explain the expert's opinion, however, it is necessary for the court to instruct the jury that the otherwise inadmissible evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence.") (quotations and citations omitted).

Berly may present his "Before and After" opinion at trial. Given this court's ruling on Motion in Limine No. 4, the

19

court does not, on the present record, see a need for a limiting instruction with respect to Berly's "Before and After" opinion. However, any party's counsel who disagrees and believes a limiting instruction is appropriate on some ground not addressed in the present order should confer with opposing counsel and then submit a proposed limiting instruction to the court.

        e.    Berly May Testify That the Value of
               Plaintiffs' Claims in the Absence of
               Fraud on the Date of the Settlements was
               Approximately 75% Of Plaintiffs' Claimed
               Damages.

In a supplemental expert report dated March 22, 2002, Berly concluded that, based on his various methods of calculating Plaintiffs' damages (including the Yardstick method, the "Before and After" method, and the Risk Factor Evaluation method),[3] "[i]nstead of recovering approximately 25% of the claim, the Plaintiffs should have received more in the range of at least 75%." In her July 11, 2006, order, the Magistrate Judge

---

    [3]The Yardstick method of calculating Plaintiffs' damages appears to be similar to the "Before and After" method. According to Berly's expert report, the Yardstick method "employs an analysis of damages sustained by entities that are closely comparable to the plaintiffs in virtually identical situations." Berly says that, in applying the Yardstick method, he used other Benlate claimants who settled with DuPont before and after the contamination test results were disclosed.

    The Risk Factor Evaluation method "considers issues that parties in litigation consider when negotiating settlements." To the extent this method focuses on the existence and knowledge of the withheld test results and their effect on the factors considered in deciding whether to settle a case, it, too, is similar to the "Before and After" method.

precluded this opinion.  The Magistrate Judge reasoned that it was based on the post-1994 settlements and verdicts that she had determined were inadmissible, and not on any reliable method or technique.

Given this court's ruling that the post-1994 settlements and verdicts are admissible, the Magistrate Judge's ruling precluding Berly's 75% opinion because it was based on the post-1994 settlements and verdicts is reversed.

Berly's expert report explains his "Before and After" method of calculating damages.  The Ninth Circuit has stated that some of the factors set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, (1993), such as peer review, publication, and potential error rate, are sometimes inapplicable.  See Living Designs, 431 F.3d at 369 n.14.  That is so with Berly's "Before and After" opinion.  His explanation of his methodology, coupled with his knowledge and experience (including experience in mass tort and complex tort litigation against the asbestos and tobacco industries), makes his "Before and After" opinion sufficiently reliable to satisfy Rule 702. See id.

2.   DuPont's Appeal.

DuPont also challenges parts of the Magistrate Judge's ruling on Motion in Limine No. 1, which sought to preclude Berly's testimony.  DuPont appeals three aspects of the order.

First, DuPont says Berly should not be allowed to testify as to the Yardstick method.  Second, DuPont says opinions about the Risk Factor Evaluation method should be excluded.  Third, DuPont argues that Berly should not be allowed to testify that disclosure of the test data would have substantially increased the settlement value by significantly undercutting DuPont's defenses.  DuPont does not convince this court that these rulings by the Magistrate Judge were clearly erroneous or contrary to law.

The gist of DuPont's appeal is that Berly lacks knowledge of the facts of Plaintiffs' cases, "including what these plaintiffs claimed or received in settlement."  See DuPont's Memorandum in Support of Appeal (July 21, 2006) at 7. DuPont's argument appears to be a mere disagreement with the Magistrate Judge's Rule 702 analysis.  That analysis conformed with the directive of Living Designs, 431 F.3d at 369 n.14, which told the court to weigh "Berly's knowledge and experience in reaching its decision as to whether the testimony was admissible."

Moreover, DuPont is overlooking evidence that Berly was indeed familiar with Plaintiffs' cases.  In his Second Supplemental Expert Report dated May 8, 2006, Berly states what the various settlements were for and then opines as to what the settlement ranges of the various cases would have been had the

22

test results not been withheld.[4]  Given Berly's experience, set

forth in his expert reports and the Magistrate Judge's July 11,

2006, order, and given his knowledge of the facts of Plaintiffs'

cases, the Magistrate Judge's decision was not clearly erroneous

or contrary to law.

            C.    This Court Affirms in Part and Reverses in Part
                 the Magistrate Judge's Order Granting in Part
                 and Denying in Part DuPont's Motion in Limine No. 2 to
                 <u>Exclude the Testimony of James Ventura.</u>

On March 13, 2006, DuPont filed Motion in Limine No. 2,

seeking to preclude the expert testimony of James Ventura for the

same reasons stated in Motion in Limine No. 1 with respect to

Berly.  On July 11, 2006, the Magistrate Judge granted that

---

[4]In that report, Berly indicates that Orchid Isle Nursery
and Hawaiian Dendrobium Farm, Plaintiffs in Civ. No. 96-01180
SOM/LEK, settled for $1,000,000, but probably would have settled
for $3,000,000 to $4,000,000 had the test data been known.  Berly
also indicates that Fuku-Bonsai, Plaintiff in Civ. No. 97-00716
SOM/LEK, settled for $2,500,000, but probably would have settled
for $7,500,000 to $10,000,000 had the test data been known.
Berly indicates that McConnell, Inc., Plaintiff in Civ. No. 00-
00328 SOM/LEK, settled for $1,000,000, but probably would have
settled for $3,000,000 to $4,000,000 had the test data been
known.  Berly indicates that Living Designs, Inc., Plaintiff in
Civ. No. 99-00660 SOM/LEK, settled for $1,600,000, but probably
would have settled for $4,800,000 to $6,400,000 had the test data
been known.  Finally, Berly indicates that Mueller Horticulture,
Plaintiff in Civ. No. 00-00615 SOM/LEK, settled for $1,200,000,
but probably would have settled for $3,600,000 to $4,800,000 had
the test data been known.

Even if Berly's Second Supplemental Report is stricken as
untimely in a subsequent motion, that report demonstrates that
Berly was familiar with the individual product liability cases
brought by Plaintiffs.  The court, of course, is expressing no
position as to whether Berly's Second Supplemental Report should
be stricken as untimely.

motion in part and denied it in part.  The Magistrate Judge ruled that Ventura is qualified to testify as a litigation attorney doing defense work in products liability litigation and that his experience and training give him specialized knowledge that will assist the trier of fact.  July 11, 2006, Order at 23-24.  The Magistrate Judge ruled that Ventura may opine on the following matters: 1) factors considered in settlement evaluation; and 2) DuPont's claims of work product privilege in the product liability cases.  The Magistrate Judge precluded Berly from testifying as to the following: 1) that DuPont had a "scheme" to conceal evidence; 2) that the settlement value of Plaintiffs' cases was 66% to 75% of the amounts claimed; 3) that the Alta tests and the Costa Rica field tests were material to settlement value determinations; 4) that the withheld test data could be considered inflammatory and therefore could have supported a punitive or aggravated damages claim in the underlying cases; and 5) that DuPont made false statements to the discovery master and Hawaii state courts to delay producing the test data.  Both Plaintiffs and DuPont now appeal the Magistrate Judge's decision on Motion in Limine No. 2.

1.   <u>Plaintiffs' Appeal.</u>

   a.   Ventura May Not Testify That DuPont Had
        a "Scheme" to Reduce the Settlement
        Value of Plaintiffs' Cases By
        <u>Withholding Evidence.</u>

Plaintiffs appeal the Magistrate Judge's prohibition on
Ventura's opinion about DuPont's alleged "scheme."   <u>See</u> July 11,
2006, Order at 25-26.   Plaintiffs appeal on the same ground they
relied on with respect to Berly's "scheme" testimony.   For the
reasons set forth above with respect to Berly's "scheme" opinion,
this court affirms the Magistrate Judge's ruling barring Ventura
from referring to a "scheme."

   b.   Ventura May Not Testify That the Results
        of the Alta Tests and the Costa Rica
        Field Tests Were Material to Determining
        <u>Settlement Value.</u>

The Magistrate Judge precluded Ventura's opinion that
the results of the Alta tests and the Costa Rica field tests were
"material."   Plaintiffs' appeal is based on the same reasons
underlying their appeal from the Magistrate Judge's preclusion of
Berly's testimony as to materiality.   For the reasons set forth
with respect to Berly's references to "materiality," Ventura is
precluded from testifying that the Alta tests and the Costa Rica
field tests were "material."

25

        c.    Ventura May Testify That the Value of Plaintiffs' Claims in the Absence of Fraud was Approximately 66-75% of the <u>Amounts They Claimed.</u>

The Magistrate Judge precluded Ventura from testifying that, in his opinion, the settlement value of the various Plaintiffs' claims was 66 to 75% of the amounts they claimed. <u>See</u> July 11, 2006, Order at 26-27. The Magistrate Judge appears to have reasoned that this opinion was inadmissible because it was based on the post-1994 settlements and verdict. In this regard, the Magistrate Judge is reversed for reasons set forth above with respect to Motion in Limine No. 4 and the sections of DuPont's Motion in Limine No. 1 pertaining to Berly's "Before and After" opinion and Berly's 75% opinion.

The Magistrate Judge had an additional reason for finding Ventura's opinion as to settlement value inadmissible. The Magistrate Judge examined Ventura's deposition testimony and concluded that Ventura's opinion as to the value of Plaintiffs' cases was irrelevant because he could not state what the settlement value of Plaintiffs' claims would have been on the date of settlement in the absence of the fraud.

It is true that, at page 181 of his deposition, Ventura says that he cannot answer a hypothetical question about what discount Plaintiffs' attorney would have applied in attempting to settle the cases had that attorney had the test data. That hypothetical question, however, was taken out of context.

26

Ventura clarified that the reason he could not answer the hypothetical question was that, even assuming Plaintiffs' attorney had the raw data, the question did not take into account the effect of the raw data on the cases that had already gone to trial in the earlier Benlate products liability cases. See Deposition of James Ventura (June 3, 2002) at 182-83. Moreover, at pages 165 to 166 of his deposition, Ventura had already testified that, had Plaintiffs' attorney had the information that was withheld, he would have examined all of the factors known to him (including the history of Benlate litigation against DuPont) and would not have settled for less than 66% to 75% of the amounts claimed. Ventura's testimony at page 181 thus does not establish that his opinion as to the settlement value of Plaintiffs' cases on the date of the settlements was baseless. The Magistrate Judge clearly erred in her reading of page 181.

The Magistrate Judge's decision precluding Ventura from opining about the settlement value of Plaintiffs' cases on the date of the settlements is reversed.

d.  Ventura May Not Testify That the Results of the Alta Tests and the Costa Rica Field Tests Could Have Been Inflammatory and Could Have Possibly Supported a Punitive or Aggravated Damages Claim in the Underlying Cases.

It is unclear whether Ventura intended to opine that the test data was "inflammatory," or that DuPont's alleged concealment of the Benlate contamination may have been

"inflammatory."   Whichever it was, Ventura opined that the "inflammatory" evidence could have supported a punitive or aggravated damage award in the underlying product liability cases.   The Magistrate Judge precluded Ventura from so opining, reasoning that the trier of fact needed no expert testimony to determine whether this evidence could have supported a punitive damage award.   She also found that this opinion was precluded under Rule 403 of the Federal Rules of Evidence.   This ruling is affirmed.

Plaintiffs argue that expert testimony would assist the jury in understanding the effect of the evidence.   This court sees no clear error in the order barring Ventura from testifying that one such effect might have been to inflame the jury.   The Magistrate Judge did not preclude expert testimony indicating that, had the test data been known, DuPont would have had a weaker case and Plaintiffs would have had a stronger case.   It is difficult to understand how the jury in the present cases could be aided by having an expert witness tell them how different juries would have reacted in other cases.

The Magistrate Judge also correctly concluded that Rule 403 bars this opinion.

e.    Although Ventura May Not Opine that DuPont Made False Statements to the Discovery Master in State Court, He May Present Opinions Based on That Assumption.

The Magistrate Judge correctly ruled that Ventura may not opine that DuPont made false statements to the discovery master and Hawaii state courts to delay producing documents. Specialized knowledge is not necessary to assist, and will not assist, the trier of fact in determining whether false statements were made and, if so, for what purpose. <u>See</u> July 11, 2006, Order at 28-29. Plaintiffs do not dispute this ruling, but instead say that Ventura will merely be supporting his other opinions with evidence of alleged false statements and delay.

The court will not prohibit Ventura from giving an opinion based on the assumption that such false statements were indeed made. The disclosure of facts or data underlying an expert's opinion to a jury is governed by Rules 705 and 703 of the Federal Rules of Evidence. Rule 705 allows an expert to "testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

Rule 703 states:

The facts or data in the particular case upon which an expert bases an opinion or inference

29

may be those perceived by or made known to
the expert at or before the hearing.  If of a
type reasonably relied upon by experts in the
particular field in forming opinions or
inferences upon the subject, the facts or
data need not be admissible in evidence in
order for the opinion or inference to be
admitted.  Facts or data that are otherwise
inadmissible shall not be disclosed to the
jury by the proponent of the opinion or
inference unless the court determines that
their probative value in assisting the jury
to evaluate the expert's opinion
substantially outweighs their prejudicial
effect.

Ventura is not precluded from relying on inadmissible

facts in reaching his opinions.  However, he may not testify as

to inadmissible facts except with leave of court and with

appropriate limiting instructions.  See United States v. 0.59

Acres of Land, 109 F.3d 1493, 1496 (9th Cir. 1997).  The parties

shall meet and confer to decide on appropriate limiting

instruction(s) before trial.  The court does not grant Ventura

leave of court at this time to testify that DuPont made false

statements to delay having to produce test results.  The court

must first see what foundation is laid for an expert opinion on

this subject, consistent with what has been timely disclosed in

Ventura's reports, and must be satisfied with a proposed limiting

instruction.

2.   DuPont's Appeal.

The Magistrate Judge denied Motion in Limine No. 2 to

the extent it sought to preclude Ventura's opinions regarding

factors considered in settlement evaluation and DuPont's claims of work product privilege.  DuPont argues that the ruling allowing such testimony is clearly erroneous and contrary to law because Ventura "possesses no knowledge of the facts and circumstances of the underlying 'Benlate' claim of any particular plaintiff."  Memorandum in Support of July 21, 2006 Appeal at 3.  DuPont argues that Rule 702 bars opinions not based on the facts of Plaintiffs' individual cases.  The court is not persuaded by DuPont on this point.

DuPont complains that Ventura's opinions pertain to settlement factors important to plaintiffs' attorneys in general.  This does not make Ventura's opinions inadmissible.  Ventura demonstrates knowledge and experience with respect to factors that attorneys consider important in settling cases.  See Living Designs, 431 F.3d at 369 n.14 (indicating that this court should weigh a fraudulent settlement damage expert's knowledge and experience in reaching a decision as to whether the expert's testimony is admissible under Rule 702).  Moreover, Ventura does opine about Plaintiffs' cases in particular.  Ventura is expected to testify that, based in part on the post-1994 settlements and verdicts, each Plaintiff would have probably settled for 66% to 75% of the amount claimed on the date of settlement.  Ventura's opinion as to factors considered by attorneys in settling cases is admissible.  See Fed. R. Evid. 702.

> D. This Court Affirms in Part and Reverses in Part the Magistrate Judge's Order Issued on August 2, 2006 (Pertaining to DuPont's Motions in Limine Nos. 6, 7, 8, 9, 10, 11, 12, 13, and 14).

On August 2, 2006, the Magistrate Judge issued an order pertaining to DuPont's Motions in Limine Nos. 6, 7, 8, 9, 10, 11, 12, 13, and 14.  Plaintiffs appeal parts of that order.

> 1. Berly's Second Supplemental Report.

The Magistrate Judge granted Motion in Limine No. 13, which sought to strike Berly's Second Supplemental Report.  The Magistrate Judge reasoned that, to the extent Berly was simply repeating earlier opinions that the court had ruled admissible, the Second Supplemental Report was unnecessary.  To the extent Berly's Second Supplemental Report was based on earlier opinions that the court had found inadmissible, the Magistrate Judge adopted her earlier rulings with respect to those opinions.

Plaintiffs have appealed the Magistrate Judge's August 2, 2006, rulings on Berly's Second Supplemental Report. Plaintiffs argue that, for the reasons stated in their appeals with respect to Motions in Limine Nos. 1 and 4, the Magistrate Judge should be reversed.  For the reasons set forth earlier with respect to Berly's opinions, the court affirms in part and reverses in part the Magistrate Judge's rulings on Motions in Limine No. 13.

The court agrees that, to the extent Berly's Second Supplemental Report simply reiterates his earlier opinions, it is

32

unnecessary.  However, to the extent it opines that Plaintiffs'
block settlement of the cases would have increased each
individual Plaintiff's settlement value on a pro rata basis based
on post-1994 settlements and verdicts, the court reverses the
Magistrate Judge's ruling barring that opinion.  For the reasons
set forth above with respect to Motions in Limine Nos. 1 and 4,
Berly may testify, as set forth in his Second Supplemental
Report, that the settlement values of Plaintiffs' cases on the
date of settlement in the absence of the fraud was approximately
three to four times what Plaintiffs had settled for in 1994.

          In its motion, DuPont argued that Berly's 2006
supplemental report was untimely.  In their opposition,
Plaintiffs argued that Berly was allowed to supplement his damage
report by virtue of an Amended Rule 16 Scheduling Order.  In its
reply, Dupont argued that the intent and understanding that the
parties and the Magistrate Judge had in amending the scheduling
order was only to allow Richard Constand to replace another
damage expert due to a medical condition of that expert.  Because
the Magistrate Judge precluded Berly's supplemental report on
other grounds, she did not reach the timeliness issue.  As this
judge cannot determine what the Magistrate Judge intended when
she amended the expert disclosure deadline in February 2006,
DuPont may file a motion to strike Berly's 2006 supplemental
report on untimeliness grounds.  DuPont is expressly granted

leave to file such a motion beyond the motions cutoff date provided the basis is limited to the untimeliness ground.  Any such motion must be filed no later than October 3, 2006.

For the reasons set forth above with respect to Motion in Limine No. 1, the court affirms the order to the extent it prohibits Berly's testimony as to DuPont's "scheme," as to the ability of a plaintiff's attorney to defeat DuPont at trial given the test data, and as to the "materiality" of the test evidence.

2.   Ventura's Supplemental Reports.

The Magistrate Judge also granted DuPont's Motion in Limine No. 14, which sought to strike the May 2006 supplemental reports by Ventura.  The court affirms in part and reverses in part.

To the extent the Magistrate Judge prohibited Ventura from opining about "materiality," the August 2, 2006, order is affirmed, for the reasons set forth above with respect to Motion in Limine No. 2.

To the extent the Magistrate Judge prohibited Ventura from opining that a reasonable settlement range would have been two to three times the amount of the 1994 settlements, the August 2, 2006, order is reversed.  Although the amount of damages Ventura believes Plaintiffs suffered has changed, his methodology has not.  For the reasons set forth above with respect to Ventura's 66% to 75% opinion in Motion in Limine No. 2, Ventura

34

is not precluded from giving an opinion that the reasonable settlement value of Plaintiffs' cases absent the fraud on the date of the settlement was two to three times what they actually settled for.  For the same reasons, Ventura may opine that, because Plaintiffs' attorney settled the cases in a block, any increase in the total settlement value would have increased each individual Plaintiff's share of the settlement on a pro rata basis.

The Magistrate Judge granted Motion in Limine No. 14 without reaching DuPont's argument that Ventura's supplemental reports were untimely.  As with Berly, DuPont is given leave to file a motion to strike Ventura's 2006 supplemental reports, based only on the untimeliness ground, no later than October 3, 2006.

3.   <u>Motion in Limine No. 6 (Richard Constand).</u>

In her August 2, 2006, order, the Magistrate Judge ruled that Richard Constand is qualified to testify as an economic expert regarding the losses allegedly sustained by Plaintiffs McConnell, Living Designs, and Fuku-Bonsai.  The Magistrate Judge found that Constand's opinions would assist the trier of fact, but precluded him from testifying about his opinions to the extent those opinions are based on post-1994 settlement evidence.

35

Plaintiffs appeal the Magistrate Judge's order, arguing that Constand did not rely on post-1994 settlement evidence, but that he did rely on post-1994 financial information that was not available at the time of the 1994 settlements.  Plaintiffs agree that Constand may not rely on this post-1994 financial information in reaching his opinions.  Plaintiffs ask that the Magistrate Judge's order be amended and clarified to exclude any opinion by Constand based on the post-1994 financial information and to allow Constand to adjust his opinions based on the exclusion of that evidence.  Plaintiffs' request is granted, and the Magistrate Judge's order is so amended and clarified.  No later than 28 days after the date of this order, Constand shall prepare (and Plaintiffs shall transmit to DuPont) new expert reports that do not use the post-1994 financial information.  Constand may modify his opinions to reflect the exclusion of the post-1994 financial information, but he may not otherwise modify or amend his previous expert reports.

Plaintiffs also request a clarification that Constand be allowed to adjust his calculations to present-day value.  In DuPont's response to the appeal, DuPont represents that, although the Magistrate Judge allowed Constand to replace a previous economic expert who had become incapacitated, Constand was not permitted to offer any opinion as to the present value of Plaintiffs' cases.  In support of that representation, DuPont

36

points to a September 5, 2002, letter from Carl H. Osaki to this
court.  That letter, however, does not support DuPont's position.
Accordingly, in his amended report, Constand may adjust his
calculations to present-day value.

4.   Motion in Limine No. 7 (Thomas Ueno).

Thomas Ueno is an economic expert designated by
Plaintiffs to testify about the interest that Plaintiffs would
have earned had they settled their cases for higher amounts.  The
Magistrate Judge's August 2, 2006, order precluded this opinion
because it was based on Berly's and Ventura's opinions that the
settlement values of Plaintiffs' cases in the absence of fraud on
the date of the settlements were 75%, and 66% to 75%,
respectively, of the amounts claimed.  Because the Magistrate
Judge had concluded that Berly's and Ventura's opinions were
inadmissible, she also precluded Ueno's "interest" opinion.  This
court reverses, as this court has reversed the Magistrate Judge's
order barring the opinions in issue by Berly and Ventura.  Ueno
may testify about his "interest" opinion.[5]

5.   Motions in Limine Nos. 9, 10, and 11.

Motions in Limine Nos. 8 to 12 sought to preclude
individual Plaintiffs in these cases from testifying as
"experts."  With respect to most of the matters Plaintiffs were

---

[5]Motion in Limine No. 7 did not challenge Ueno's opinions as
to DuPont's net worth, specifically reserving the right to do so
at a later time.

37

proposing to testify to as experts, the Magistrate Judge concluded that Plaintiffs were actually going to testify as percipient lay witnesses, rather than as experts.  With respect to Motions in Limine Nos. 9, 10, and 11, the Magistrate Judge prohibited Plaintiffs David Fukumoto, Allan Kunimoto, and John C. McConnell from giving any opinions that relied on Constand's report, as the Magistrate Judge had already stricken parts of that report.

Although this court has reversed the Magistrate Judge's ruling with respect to Constand's report, the court affirms the Magistrate Judge's decision to prohibit Fukumoto, Kunimoto, and McConnell from testifying as to Constand's report.  Those Plaintiffs have failed to show that they have sufficient specialized knowledge regarding Constand's opinions such that any "opinion" those Plaintiffs have concerning or relying on Constands' report will assist the trier of fact.  See Fed. R. Evid. 702.  Instead, Fukumoto, Kunimoto, and McConnell appear to be trying to bolster Constand's opinions by adopting them as their own without setting forth any factual basis or analysis in their expert reports.

This court may affirm the Magistrate Judge on any ground apparent from the record.  As the lack of expertise by Fukumoto, Kunimoto, and McConnell is apparent from the record, this court affirms the Magistrate Judge's ruling barring

Fukumoto, Kunimoto, and McConnell from relying on Constand's opinions or mentioning Constand's report.  See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 941 (9th Cir. 2006) (appellate courts may affirm on any ground supported by the record); Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398 (9th Cir. 1996) (same).

IV.      CONCLUSION.

The Magistrate Judges' July 11, 2006, and August 2, 2006, orders are affirmed in part and reversed in part, as detailed above.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 22, 2006.

_____
Susan Oki Mollway
United States District Judge

DAVID MATSUURA, ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY; FUKU-BONSAI, INC., ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY, ET AL.; LIVING DESIGNS, INC., ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY, ET AL; MCCONNEL INC. V. E.I. DU PONT DE NEMOURS AND COMPANY; ANTHURIUM ACRES, ET AL. V. E.I. DU PONT DE NEMOURS AND COMPANY; CIVIL NOS. 96-01180; 97-00716; 99-00660; 00-00328 and 00-00615 SOM-LEK: Order Affirming in Part and Reversing in Part Magistrate Judge Orders Dated July 11, 2006, and August 2, 2006: Order Reversing Magistrate Judge Order That Granted DuPont's Motion in Limine No. 4 and Precluded Evidence of Post-1994 Settlements and Verdicts; Order Affirming in Part and Reversing in Part Magistrate Judge Order That Granted in Part and Denied in Part DuPont's Motion in Limine No. 1 to Exclude the Testimony of J. Anderson Berly; Order Affirming in Part and Reversing in Part Magistrate Judge Order That Granted in Part and Denied in Part DuPont's Motion in Limine No. 2 to Exclude the Testimony of James Ventura; and Order Affirming in Part and Reversing in Part Magistrate Judge Order Issued on August 2, 2006 (Pertaining to Dupont's Motions in Limine Nos. 6, 7, 8, 9, 10, 11, 12, 13, and 14)